OPINION
{¶ 1} Appellant, James R. Mendiola, appeals the judgment entered by the Domestic Relations Division of the Portage County Court of Common Pleas. The trial court entered a judgment entry terminating the marriage of appellant and appellee, Sherry L. Mendiola.
 {¶ 2} The parties were married in 1998. The marriage produced no natural children. In December 2003, the parties traveled to Guatemala for the purpose of adopting a child. The parties returned to Ohio with Dominic, a Guatemalan boy born in February 2003. The status of Dominic's final adoption is uncertain.
 {¶ 3} In February 2004, appellant moved out of the marital residence. Later that year, appellant filed the instant action for divorce. Appellee filed an answer and counterclaim for divorce. In his complaint and several other initial pleadings, appellant asserted that Dominic was his son.
 {¶ 4} In September 2005, the matter was heard before a magistrate. At that time, appellant raised the issue that Dominic's adoption process may not have been finalized. The hearing did not conclude that day and was rescheduled for November 2005. The parties were given the opportunity to hire experts to address the adoption issue.
 {¶ 5} The hearing concluded in November 2005. The parties were the only witnesses to testify at the hearing. Dominic's passport and a copy of a facsimile transmission of paperwork regarding the adoption process were submitted as exhibits. No Guatemalan adoption decree was introduced. Neither party could affirmatively testify to the status of Dominic's adoption.
 {¶ 6} The magistrate issued a decision, wherein she recommended that appellee be granted custody of Dominic, that appellant did not prove that the adoption was invalid; that Dominic was a child of the marriage; and that appellant pay $940.54, per month, in child support. The magistrate also made recommendations concerning the division of property.
 {¶ 7} Appellant filed objections to the magistrate's decision. The trial court overruled appellant's objections and adopted the magistrate's decision as its own.
 {¶ 8} Appellant raises five assignments of error. These assigned errors will be addressed out of numerical order. Appellant's first assignment of error is:
 {¶ 9} "The trial court erred by determining that the minor child was issue of the marriage in that the trial court did not possess subject matter jurisdiction."
 {¶ 10} Appellant argues that only the probate court has jurisdiction to grant an adoption. Specifically, appellant claims R.C. 3107 vests exclusive jurisdiction over adoptions to the probate court.
 {¶ 11} Appellant is correct that the probate court has exclusive authority to grant an adoption. However, the juvenile division of the court of common pleas has the authority to recognize the existence of a parent-child relationship. R.C. 3111.06 provides, in part:
 {¶ 12} "If an action for divorce, dissolution, or legal separation has been filed in a court of common pleas, that court of common pleas has original jurisdiction to determine if the parent and child relationship exists between one or both of the parties and any child alleged or presumed to be the child of one or both of the parties."
 {¶ 13} Thus, while the juvenile division of the court of common pleas does not have the authority to grant an adoption, it does have the authority to recognize the existence of a prior adoption.
 {¶ 14} In this matter, the trial court did not issue a decree of adoption pursuant to R.C. 3107.14. Rather, the trial court attempted to recognize a foreign adoption pursuant to R.C. 3107.18.
 {¶ 15} Appellant's first assignment of error is without merit.
 {¶ 16} Appellant's second, third, and fifth assignments of error are:
 {¶ 17} "[2.] The trial court erred by failing to make a specific finding that the minor child was either a natural or adopted child of the parties.
 {¶ 18} "[3.] The trial court erred by failing to determine legal parentage of the minor child before granting custody.
 {¶ 19} "[5.] The trial court erred by failing to apply ORC 3111.02 and3107.18 in making a determination of parentage."
 {¶ 20} Appellant's second, third, and fifth assigned errors all concern the trial court's ultimate decision concluding that Dominic was a child of the marriage. Due to the related nature of these assigned errors, they will be addressed in a consolidated fashion.
 {¶ 21} The parent and child relationship may be established in the following ways, pursuant to R.C. 3111.02, which provides, in part:
 {¶ 22} "The parent and child relationship between a child and the natural father of the child may be established by an acknowledgement of paternity as provided in sections 3111.20 to 3111.35 of the Revised Code, and pursuant to sections 3111.01 to 3111.18 or 3111.38 to 3111.54
of the Revised Code. The parent and child relationship between a child and the adoptive parent of the child may be established by proof of adoption or pursuant to R.C. 3107 of the Revised Code."
 {¶ 23} Since it is undisputed that Dominic is not the natural child of appellant, the initial language of R.C. 3111.02 is not applicable to this matter.[1] Appellee argues that appellant is presumed to be Dominic's father pursuant to R.C. 3111.03. However, R.C. 3111.03 only creates a presumption that an individual is a child's natural
father.[2] It is undisputed that appellant is not Dominic's natural father.
 {¶ 24} The primary issue in this case was the trial court's decision to recognize an adoption decree issued by a foreign country.
 {¶ 25} "(A) Except when giving effect to such a decree would violate the public policy of this state, a court decree terminating the relationship of parent and child, or establishing the relationship by adoption, issued pursuant to due process of law by a court of any jurisdiction outside this state, whether within or outside the United States, shall be recognized in this state, and the rights and obligations of the parties as to all matters within the jurisdiction of this state, including, without limitation, those matters specified in section 3107.15 of the Revised Code, shall be determined as though the decree were issued by a court of this state. A decree or certificate of adoption that is issued under the laws of a foreign country and that is verified and approved by the immigration and naturalization service of the United States shall be recognized in this state. * * * ."[3]
 {¶ 26} This statute requires a decree of adoption from a foreign country to be "verified and approved" by the Immigration and Naturalization Service of the United States ("INS"). Regarding this requirement, this court has held, "R.C. 3107.18 expressly sets out the requirement that, in order for a foreign decree or adoption to be recognized in Ohio, it must be verified and approved by the INS."[4]
In Walsh v. Walsh, there was evidence that the father adopted the child in Honduras, however, the adoption decree was not approved or verified by the INS.[5] As this court noted, "[d]espite the evidence and testimony indicating that appellee adopted [the child] and registered [the child's] birth, Ohio law expressly prohibits recognition of appellee's Honduran adoption and registration of [the child's] birth without the requisite verification and approval by the INS."[6]
 {¶ 27} In the instant matter, there was no evidence of a finalized adoption decree from Guatemala. Since there was no foreign adoption decree, there was obviously no decree presented to the trial court that was approved and verified by the INS.
 {¶ 28} To establish a parent-child relationship, the trial court attempted to circumvent the specific requirements of R.C. 3107.18. In its judgment entry, the trial court held:
 {¶ 29} "Plaintiff raised the adoption issue for the first time at trial, although he testified that he was aware of a potential problem with the adoption prior to the filing of his divorce complaint. He failed to disclose his expert witness in a timely manner, which prejudiced Defendant. Without an expert to testify that the adoption was invalid, together with Plaintiff's repeated admissions that Dominic is a child of the marriage, this Court has no choice but to find that Dominic is a child of the marriage.
 {¶ 30} "In addition, at no time prior to trial or at trial did plaintiff move to amend his complaint or his answer to the counterclaim in which he admitted that Dominic was his minor child."
 {¶ 31} Initially, we will address the trial court's reasoning regarding appellant's failure to amend the pleadings.
 {¶ 32} Mere pleadings do not establish paternity. This is especially true in a situation such as this, where the alleged father specifically contests the issue of paternity at trial.
 {¶ 33} Moreover, at trial, appellant was advancing a bifurcated argument. He testified he did not know if the parties had adopted Dominic. He stated that, if Dominic had been adopted, he would willingly support him. Also, if the adoption was valid, he would agree to take care of Dominic if something were to happen to appellee where she would not be able to care for him. However, if Dominic was not adopted by the parties, it was appellant's position that either he or appellee should pursue the finalization of the adoption process on their own. He was not in favor of a joint adoption.
 {¶ 34} Appellant's position would be analogous to an alleged biological father suspecting that another man was the father. The alleged father might argue, if the child is mine, I am willing to support him and want to fully exercise my parental rights. However, if the child is not mine, I do not want to be financially responsible for the child.
 {¶ 35} The better practice would have been for appellant to formally amend the pleadings to be consistent with his current position. However, in light of appellant's unique argument, appellant should not be penalized for failing to formally amend his initial pleadings, wherein he asserts Dominic is an issue of the marriage. Simply stated, appellant's position was he did not know the status of Dominic's alleged adoption. Accordingly, it would not have been prudent for him to totally abandon his statements in his pleadings where he seeks parental rights and responsibilities for Dominic.
 {¶ 36} Additionally, we believe the pleadings were sufficiently amended to conform to the evidence presented at trial pursuant to Civ.R. 15(B), which provides:
 {¶ 37} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of either party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
 {¶ 38} The Supreme Court of Ohio has held that "[t]he rule expresses a liberal policy toward the allowance of amendments."[7] Also, Civ.R. 15 "'was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[8]
 {¶ 39} Again, appellant did not formally amend his pleadings. However, this does not expressly bar the application of Civ.R. 15(B).[9]
Moreover, Civ.R. 15(B) provides that the "[f]ailure to amend as provided herein does not affect the result of the trial of these issues." Finally, we note Civ.R. 15(B) provides that an amendment can be made "at any time, even after judgment." Thus, upon remand, it would be prudent for appellant to formally amend his pleadings to express his current position regarding the validity of Dominic's adoption and appellant's wishes regarding Dominic's custody and support.
 {¶ 40} There are two general forms of amendments under Civ.R. 15(B). The first is where the parties expressly or impliedly consent to the trial of an issue.[10] The second is where one party objects to an issue being presented where that issue was not raised in the pleadings.[11] This matter falls within the second category.
 {¶ 41} Both the trial court and appellee note that appellant did not raise the issue regarding the validity of the adoption until the eve of trial. Appellant obtained new counsel on September 1, 2005, only 11 days prior to trial. Quite possibly, appellant's change in trial strategy was a result of consultations with his new attorney.
 {¶ 42} Appellee objected to appellant raising the issue of the validity of the adoption so late in the proceedings. However, as stated in appellee's appellate brief, "[t]he record in this action reveals that Magistrate Perk purposely delayed the second day of trial to allow [appellant] the opportunity to find and identify an expert witness to testify about the validity of the adoption." The trial was not resumed until November 28, 2005, over two-and-one-half months after appellant initially raised the issue of the validity of the adoption. Thus, in effect, a continuance was granted to allow the parties additional time to investigate the issue of the validity of the adoption.
 {¶ 43} Appellee took steps during the continuance to investigate the issue of the validity of the adoption. The record contains a copy of a letter dated September 22, 2005, wherein appellee's counsel states that appellee had retained the services of Attorney Farhad Sethna as an expert relating to the validity of the adoption. Accordingly, appellee has not demonstrated that she was prejudiced by appellant's delay in raising the issue.
 {¶ 44} Essentially, the trial court informally amended the pleadings to include the issue of the validity of Dominic's adoption. After appellee's initial objection to the issue, the trial court granted a continuance and permitted the parties to retain the services of expert witnesses. Finally, appellee was not prejudiced by the amendment, as she took steps to prepare for the issue, including retaining an expert witness.
 {¶ 45} The trial court also based its decision, in part, on the fact that appellant did not produce expert testimony to demonstrate that the adoption was invalid. By making this statement, the trial court committed two errors. First, the trial court switched the burden of proof to appellant to demonstrate that the "adoption was invalid." Second, the trial court required expert testimony to resolve the adoption issue.
 {¶ 46} Appellant testified that he conducted an investigation and, through his research, could not find a final adoption decree for Dominic. His position was an adoption decree did not exist. Essentially, the trial court required appellant to prove a negative, i.e., the nonexistence of an adoption decree.
 {¶ 47} Further, the existence of a valid adoption decree from Guatemala, approved and verified by the INS, was not a question that required expert testimony. If the adoption decree existed, it would speak for itself. Thus, the trial court, as a matter of law, could decide whether to recognize the Guatemalan adoption decree pursuant to R.C. 3701.18.[12]
 {¶ 48} The trial court improperly shifted the burden of proof to appellant regarding the existence of the parent-child relationship. Further, by merely finding that Dominic was a "child of the marriage," the trial court did not specifically determine if Dominic was adopted by appellant. This matter is remanded to the trial court to determine if a parent and child relationship exists between appellant and Dominic pursuant to R.C. 3107.18. The trial court is to hold a de novo hearing on the issue of the validity of Dominic's adoption, where both parties are permitted to introduce evidence relevant to this issue.
 {¶ 49} Appellant's second, third, and fifth assignments of error have merit to the extent indicated.
 {¶ 50} Appellant's fourth assignment of error is:
 {¶ 51} "The trial court erred by proceeding to a finding that Dominic was a child of the parties when the Defendant has not complied with the requirements of Revised Code 3109.27 (now renumbered 3127.23.)"
 {¶ 52} Appellant filed an affidavit of child custody pursuant to R.C.3109.27, which has subsequently been renumbered as R.C. 3127.23. Appellee did not file a similar affidavit.
 {¶ 53} Appellant did not raise this issue before the magistrate or in his objections to the magistrate's decision. However, a jurisdictional argument for alleged deficiencies regarding R.C. 3109.27 cannot be waived on appeal for failing to raise it in the lower court.[13]
 {¶ 54} The Supreme Court of Ohio has held, "[t]he requirement in R.C.3109.27 that a parent bringing an action for custody inform the court at the outset of the proceedings of any knowledge he has of custody proceedings pending in other jurisdictions is a mandatory jurisdictional requirement of such an action."[14] However, the Supreme Court of Ohio subsequently relaxed some of the strict jurisdictional requirements inIn re Palmer, where the court held:
 {¶ 55} "If we were to deny subject-matter jurisdiction by a mechanistic interpretation of R.C. 3109.27, it would be possible for any party to completely obstruct a custody proceeding by willfully failing to file an R.C. 3109.27 affidavit or pleading. Such a result would not only contravene the clear intent of R.C. 3109.27 but could potentially render the custody statutes of this state a nullity. Moreover, such a result would hamstring our long-established rule that ultimately the issue must be what is in the best interests of the child.[15] Under the present circumstances a rigid interpretation of R.C.3109.27 would only serve to prolong the agony of the children herein."[16]
 {¶ 56} Finally, the Supreme Court of Ohio recently revisited this issue, holding, "the initial failure to comply with R.C. 3109.27 has bearing on the juvenile court's authority to exercise jurisdiction rather than on its subject-matter jurisdiction."[17]
 {¶ 57} Following the Palmer decision, this court, as well as other courts, has declined to strictly apply the jurisdictional requirement of R.C. 3109.27, as construed by Pasqualone[18] This court has held, "the mandates of R.C. 3109.27, while required, are not jurisdictional so long as the statute's requirements are substantially satisfied and no prejudice results."[19]
 {¶ 58} At this time, we cannot conclude that appellee's failure to comply with R.C. 3109.27 was not prejudicial. The primary issue in this case was the status of Dominic's foreign adoption. However, we have concluded that the trial court erred in its determination that Dominic is a child of the marriage. We are remanding this matter to the trial court for additional proceedings. When this matter is returned to the trial court, appellee will have the opportunity to cure her deficiency in regard to former R.C. 3109.27, by filing supplemental documents.[20]
 {¶ 59} Appellant's fourth assignment of error is without merit.
 {¶ 60} The judgment of the trial court is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. COLLEEN MARY OTOOLE, J., concurs,
CYNTHIA WESTCOTT RICE, J., concurs in judgment only.
[1] Walsh v. Walsh (2001), 146 Ohio App.3d 48, 54.
[2] R.C. 3111.03(A).
[3] R.C. 3107.18.
[4] Walsh v. Walsh, 146 Ohio App.3d at 54.
[5] Id. at 55.
[6] Walsh v. Walsh, 146 Ohio App.3d at 55.
[7] (Citations omitted.) Hall v. Bunn (1984), 11 Ohio St.3d 118,121.
[8] Id., citing Hardin v. Manitowoc-Forsythe Corp. (C.A.10, 1982), 691 F.2d 449, 456.
[9] Hall v. Bunn, 11 Ohio St.3d at 121, at fn. 2.
[10] Hall v. Bunn, 11 Ohio St.3d at 121.
[11] Id.
[12] See, e.g., Walsh v. Walsh, 146 Ohio App.3d at 56.
[13] (Citations omitted.) In re Palmer (1984), 12 Ohio St.3d 194,196.
[14] Pasqualone v. Pasqualone (1980), 63 Ohio St.2d 96, paragraph one of the syllabus.
[15] In re Cunningham (1979), 59 Ohio St.2d 100.
[16] In re Palmer, 12 Ohio St.3d at 197.
[17] In re Complaint for Writ of Habeas Corpus for Goeller,103 Ohio St.3d 427, 2004-Ohio-5579, at ¶ 13.
[18] See Linda Kay F. v. Raymond D. (Feb. 5, 1999), 6th Dist. No. H-98-028, 1999 Ohio App. LEXIS 256, at *28; Burger v. Burger (Dec. 9, 1994), 11th Dist. No. 93-P-0100, 1994 Ohio App. LEXIS 5532, at *6-7.
[19] (Secondary citation omitted.) Marvin v. Marvin (Feb. 7, 1997), 11th Dist. No. 96-P-0185, 1997 Ohio App. LEXIS 430, at *7-8, citingBurger v. Burger, supra, at *5.
[20] In re Complaint for Writ of Habeas Corpus for Goeller, supra, at ¶ 11, citing In re Porter (1996), 113 Ohio App.3d 580, 584.